**In the United States District Court**
**For the District of Columbia**

| | |
|---|---|
| THE EQUAL RIGHTS CENTER<br>11 Dupont Circle NW #4<br>Washington, D.C. 20036,<br><br>and<br><br>JON MITCHINER<br>314 12th Street, NE<br>Washington, D.C. 20002<br><br>and<br><br>DAVID NELSON<br>909 F Street, N.E.<br>Washington, D.C. 20002,<br><br>Individually, on Behalf of the Equal Rights Center's Members, and on Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>DISTRICT OF COLUMBIA,<br>OFFICE OF THE MAYOR<br>John A. Wilson Building,<br>1350 Pennsylvania Avenue, NW,<br>Washington, DC 20004<br><br>          Defendant. | Civil Action No. 1:07-cv-01838RCL<br><br>**AMENDED**<br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**AMENDED COMPLAINT**

Plaintiffs, on their own behalf and on behalf of all others similarly situated, bring this action for injunctive relief and damages under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12165 (the "ADA"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (the "Rehabilitation Act"), and the District of Columbia Human Rights Act, D.C. Code §§ 2-

1401 et seq. (the "DCHRA"). Plaintiffs complain and allege, upon personal knowledge and information and belief, as follows:

## NATURE OF THE ACTION

1. This action arises from the failure of the Defendant District of Columbia ("D.C." or "the District"), the D.C. Department of Human Services, the D.C. Office of Zoning, and other agencies, departments, legislative entities and all other instrumentalities of the District (collectively, the "D.C. Government") to provide accommodations to deaf and hard of hearing persons so that those persons may adequately obtain the D.C. Government's services, benefits, activities, and programs.

2. Deaf and hard of hearing persons attempting to obtain the D.C. Government's services, benefits, activities, and programs have suffered violations of their statutory rights resulting from the discriminatory practices of the D.C. Government in refusing to provide means for effective communication with the deaf and hard of hearing, including but not limited to qualified sign language interpreters, auxiliary aids (such as telecommunication devices for the deaf ("TDDs"), video-text displays, assistive listening devices), and adequate and proper training and supervision of D.C. Government employees and agents in the provision and use of these auxiliary aids and services.

3. Plaintiffs, on behalf of all deaf and hard of hearing persons who have sought, attempted to use, or avail themselves of the services, benefits, activities, and programs of the D.C. Government at any time during the period beginning October 10, 2004 to the present ("the Class"), bring this action to gain injunctive relief and recover damages for violations of the laws of the United States and the District of Columbia.

4. As further alleged herein, the D.C. Government has refused to correct its discriminatory practices even with the knowledge that such practices were occurring in violation of the law.

5. As a result of the Defendant's unlawful actions, Plaintiffs have suffered exclusion from government services, benefits, activities, programs, and requirements, as well as financial losses, discrimination, frustration, humiliation, and embarrassment.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiffs' ADA and Rehabilitation Act claims pursuant to 28 U.S.C. §§ 1331 and 1343 (2006).

7. This Court has supplemental jurisdiction over Plaintiffs' D.C. statutory claims pursuant to 28 U.S.C. § 1367(a) (2006).

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (c) (2006), because the Defendant District of Columbia is a municipal corporation located within the jurisdiction of this judicial district; and under § 1391(b)(2), because all of the acts giving rise to Plaintiffs' claims occurred in the District of Columbia.

## PARTIES

9. Plaintiff David Nelson is an adult residing at 909 F Street, N.E., Washington, D.C. 20002.

10. Plaintiff Jon Mitchiner is an adult residing at 314 12th Street, NE, Washington, D.C. 20002.

11. Plaintiff Equal Rights Center is a nonprofit 501(c)(3) organization, organized within the District in 1999, with its principal place of business at 11 Dupont Circle NW, Suite 400, Washington, D.C. 20036. The Equal Rights Center receives and investigates complaints of

unlawful discrimination in housing, employment, and public accommodations.

12. The Equal Rights Center's members include many individuals with disabilities who have attempted to use or avail themselves of the services, benefits, programs, and activities of the D.C. Government.

13. The Equal Rights Center has received complaints from deaf individuals who have had difficulty obtaining effective means of communication, including qualified sign language interpreters, when utilizing the services, benefits, programs, and activities of the D.C. government, including D.C. executive agencies and D.C. public schools.

14. The Equal Rights Center's members further include many individuals with disabilities who have an interest in combating persistent discriminatory practices that place many Washington area residents at a disadvantage, or illegally deny them access to opportunity, including access to government services.

15. Defendant District of Columbia is a municipal corporation that operates several agencies, departments, and instrumentalities, including the Department of Human Services (the "DHS") and the Office of Zoning (the "DCOZ").

16. The District is a person for purposes of the Civil Rights Act of 1871, 42 U.S.C. § 1983, as well as a public entity within the meaning of Title II of the ADA, 42 U.S.C. §12115.

17. The D.C. Government's agencies, departments, and instrumentalities receive federal financial assistance within the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

18. The Department of Human Services, the Office of Zoning, the D.C. Public Schools, and other District departments, agencies, and instrumentalities are agents of Defendant District of Columbia.

**CLASS ACTION ALLEGATIONS**

19.     Plaintiffs bring this action in their personal capacity on their own behalf, and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

20.     Plaintiffs' class action is on behalf of the following "Class":

> All deaf and hard of hearing individuals who primarily rely upon American Sign Language for in-person communication and/or auxiliary aids for telephone communication and used, attempted to use, availed themselves, or attempted to avail themselves of any service, benefit, activity, program, or requirement that was provided, sponsored, administered, supported, or required by the District of Columbia or any of its departments, agencies, or instrumentalities at any time during the period beginning October 10, 2004 to the present, and who were denied effective communication due to the lack auxiliary aids including qualified interpreter services; and all such individuals who did not use, attempt to use, avail themselves, or attempt to avail themselves of such services, benefits, activities, programs, or requirements during the same time period because they knew that their needs for auxiliary aids or and/or qualified interpreter services were not being met, and would not be met, by the District of Columbia.

21.     Because such information is in the exclusive control of the D.C. Government, Plaintiffs cannot determine, and therefore do not know, the exact number of class members. Plaintiffs expect that the D.C. Government will provide through discovery information that may allow for a proper determination or estimate of the number of class members.  However, upon information and belief, there are an estimated 25,000 residents within the District of Columbia who primarily rely upon American Sign Language for in-person communication and/or auxiliary aids for telephone communication.  Many more visit the District each day for work or pleasure. Thus, given the nature of the action and the numerous services, activities, benefits, programs, and requirements of the D.C. Government, Plaintiffs' understanding is that the Class will comprise thousands of members.

22. Because Class members may come from all over the Washington, D.C. metropolitan area, the United States, and the world, and may have moved, changed status, or relocated since the time of their injuries, the Class is geographically widely dispersed.

23. Given that the Class members are so numerous and geographically dispersed, joinder of all Class members is impracticable.

24. There are questions of law and fact common to the class, including:

    a. Whether the D.C. Government has not provided qualified sign language interpreters to Class members attempting to use or avail themselves of the District's services, benefits, activities, programs, and requirements;

    b. Whether the D.C. Government failed to provide other auxiliary aids to Class members attempting to use or avail themselves of the District's services, benefits, activities, programs, and requirements;

    c. Whether the D.C. Government's failure to provide such services violated Title II of the ADA, or Section 504 of the Rehabilitation Act, or both;

    d. Whether the D.C. Government intentionally or knowingly discriminated against Plaintiffs and other members of the Class;

    e. Whether the D.C. Government violated the District of Columbia Human Rights Act;

    f. Whether the D.C. Government's conduct, as described in this complaint, caused injury to the Plaintiffs and other members of the Class, and;

    g. The appropriate measure of damages sustained by the Plaintiffs and other Class members.

25. Plaintiffs Nelson and Mitchiner have claims that are typical of the claims of the

Class as defined.

26.     Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs' interests are consistent and aligned with, and are in no way antagonistic to, those of other members of the Class.

27.     Plaintiffs are adequately represented by counsel with experience in civil rights and class action litigation.

28.     The D.C. Government has acted and/or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief, or both, with respect to the Class as a whole.

29.     The questions of law and fact common to the Class predominate over any questions affecting only individual Class members.

30.     A class action is superior to other methods for the fair and efficient adjudication of the controversies in this litigation.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.  Class action certification is thus the most efficient vehicle for the class members to gain judicial relief, as well as the procedure that will best economize judicial resources.

31.     Class action treatment will also permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate a discrimination, civil rights, or tort claim, or more than one of these claims, such as is asserted in this Complaint.

32.     This class action presents no difficulties in management that would preclude maintenance as a class action.

33.     The Class is readily definable and is one for which records of the names and addresses of the members of the Class exist in the Defendant's records and files.

## FACTUAL ALLEGATIONS

34.     The District is a municipal corporation that operates many agencies, departments, and instrumentalities, including the Income Maintenance Administration, the Department of Human Services, and the Office of Zoning.

### David Nelson

35.     Mr. Nelson is a deaf individual and a member of the Equal Rights Center. He cannot hear or understand speech. Mr. Nelson relies on American Sign Language for effective in-person communication at meetings, hearings and interviews with government agencies. Mr. Nelson is currently the President of the D.C. Association of the Deaf.

36.     On April 26, 2007, Mr. Nelson received an emailed invitation from Dr. Eve Byford-Peterson, Principal, to attend an Open House on May 3, 2007, at Prospect Learning Center, 920 F Street N.E., Washington, D.C. The Prospect Learning Center is a District of Columbia Public School which provides special education for children with severe learning disabilities.

37.     Mr. Nelson responded by email on that same day informing the school that he would be attending, and would need a sign language interpreter. As the notice contained no contact information for requests for accommodations, Mr. Nelson sent his request for an interpreter to the email address at the school given in the notice for RSVP's.

38.     When Mr. Nelson arrived at the Open House on May 3, however, there was no interpreter present. Principal Byford-Peterson was unaware of how to obtain a qualifed ASL interpreter. The Principle attempted to secure an interpreter through Kendall Elementary School, but was unsuccessful and made no further efforts to obtain an interpreter. The Open House went

forward with no effective interpreter provided for Mr. Nelson.

39.    Mr. Nelson resides at 909 F Street, N.E., which is located in Advisory Neighborhood Commission (ANC) 6A of Ward Six.   Mr. Nelson had in the past tried repeatedly but unsuccessfully to get qualified sign language interpreters at those meetings. Prior to the summer of 2007, he was told by his ANC Commissioner, Joseph Frengler, that the ANC did not have the funds for interpreters, and that it had been unsuccessful in locating volunteer interpreters.

40.    In the summer of 2007, Mr. Frengler informed Mr. Nelson that the ANC would have to find the funds to hire a sign language interpreter, pursuant to a directive to all ANC's from the DC Office of Advisory Neighborhood Commissions (OANC).  Although the OANC had directed all ANC's to provide sign language interpreters, it provided them with no budget with which to do so.  Therefore, Mr. Frengler informed Mr. Nelson that ANC 6A would only have the funds for one interpreter three or four times a year.  ANC 6A meets on a monthly basis, and its subcommittees meet with more frequency.

41.    Mr. Nelson has suffered frustration, humiliation, emotional pain and suffering, anxiety, and embarrassment resulting from his inability to communicate with the District of Columbia.

### Jon Mitchiner

42.    Plaintiff Jon Mitchiner is a deaf individual.  He cannot hear or understand speech. Mr. Mitchiner relies on ASL for effective in-person communication at meetings and interviews with government agencies.

43.    Mr. Mitchiner is seeking approval from the D.C. Board of Zoning Adjustment to build a garage on his property at 314 12th Street, NE, Washington, D.C. 20002.

44.    The D.C. Board of Zoning Adjustment is part of the D.C. Office of Zoning.

45. The D.C. Board of Zoning Adjustment set a hearing on Mr. Mitchiner's request for May 22, 2007, at 10:30 am.

46. On January 18, 2007, Mr. Mitchiner contacted the D.C. Office of Zoning to request an ASL interpreter at the May 22 hearing, in order to allow for his effective communication during those proceedings.

47. Ms. Sara Bardin, a special assistant in the Office of Zoning, responded to Mr. Mitchiner's request on January 19, 2007, assuring him that an ASL interpreter would be present at the hearing.

48. On May 11, 2007, Mr. Mitchiner contacted several staff members of the Office of Zoning, again to remind them of his need for an ASL interpreter during the May 22 hearing.

49. Ms. Bardin responded on May 21, 2007 to confirm that an interpreter would be provided at Mr. Mitchiner's hearing.

50. On May 22, 2007, the D.C. Board of Zoning began Mr. Mitchiner's hearing before an interpreter arrived. Unable to communicate effectively, Mr. Mitchiner was forced during the hearing to take an oath without understanding fully the substance of such an act.

51. The interpreter, Ms. Dominique Evans, arrived during a recess of the hearing proceedings granted as requested by Mr. Mitchiner's architect.

52. The interpreter herself -- Ms. Evans -- was hard-of-hearing. She was not a qualified or professional interpreter. Ms. Evans was not registered as a professional interpreter with the Registry of Interpreters for the Deaf. She appeared to have no formal interpreting training. Her only interpreting experience was from religious services.

53. Ms. Evans lacked expressive and receptive skills in ASL. She failed to interpret large portions of the hearing and lacked the legal vocabulary to do so. Furthermore, she did not

understand what Mr. Mitchiner was signing.

54. As a result, Mr. Mitchiner was forced to rely on a prepared written statement to make his case during the hearing. Mr. Mitchiner wanted to interject during the hearing, but refrained from doing so for fear that Ms. Evans would misinterpret his testimony.

55. Mr. Mitchiner was offered a postponement of the judgment in his case. This postponement was not offered because of the lack of effective communication, but was due to a potential change in the law that could affect Mr. Mitchiner's petition.

56. Due to Ms. Evans's inability to interpret, Mr. Mitchiner did not fully understand the implications of this postponement, and thus accepted the postponement.

57. The postponed hearing has been rescheduled for November 6, 2007. Given his past experience, Mr. Mitchiner has no confidence that a qualified interpreter will be provided to enable him to participate effectively in this hearing.

58. Mr. Mitchiner was unable to understand or participate in his hearing and was prevented from making an informed decision about the status of his case as a result of the Office of Zoning's failure to provide a qualified ASL interpreter.

59. Mr. Mitchiner has suffered and continues to suffer frustration, humiliation, exclusion from equal access to government, and loss of dignity as a result of the Office of Zoning's failure to provide a qualified ASL interpreter.

### Class Action Allegations

60. According to statistics released by Gallaudet University in July 2004, there are over 25,000 deaf and hard of hearing individuals living in the District alone. There are over 215,000 deaf and hard of hearing individuals living in Maryland and over 287,000 deaf and hard of hearing individuals living in Virginia. According to statistics released by the United States

Census Bureau in 2004, over nine million people living in the United States are deaf or hard of hearing.

61. Many of the individuals indicated in the above paragraph have, since October 10, 2004, attempted to use or avail themselves of services, programs, and activities of the D.C. Government. Furthermore, many of the individuals described in the above paragraph have refrained from using the D.C. Government's services, programs, and activities because the D.C. Government has failed to provide appropriate auxiliary aids and services to allow those individuals to effectively communicate with D.C. Government employees and personnel.

62. Many of the above individuals rely on ASL or other forms of sign language for communication in person. Also, many of the above individuals rely on communications devices for the deaf (e.g., "TDDs") or other auxiliary aids for telephone communication.

63. Upon information and belief, these deaf and hard of hearing individuals have had similar experiences to those of Mr. Nelson and Mr. Mitchiner. Thus, Mr. Nelson's and Mr. Mitchiner's claims are representative of those of the Class.

64. Since January, 2004, many individuals have been unable to communicate with the District and certain of its agencies, departments, and instrumentalities due to the District's (and its agencies', departments', and instrumentalities') failure to provide appropriate aids and auxiliary services, including qualified sign language interpreters and TDDs.

65. Many of these individuals have suffered frustration, humiliation, emotional pain and suffering, anxiety, trauma, and embarrassment resulting from their ordeals dealing with the District, its departments, its agencies, and its instrumentalities.

## COUNT I

**(Discrimination on the Basis of Disability in Violation of the Americans with Disabilities Act)**

66. Paragraphs 1-62 are incorporated as if fully restated herein.

67. Defendant District of Columbia is a public entity within the meaning of Title II of the ADA, 42 U.S.C. § 12131(1)(A).

68. The District's departments, agencies, and instrumentalities, including the Department of Human Services, the Income Maintenance Administration, and the Office of Zoning are public entities within the meaning of Title II of the ADA, 42 U.S.C. § 12131(1)(B).

69. Mr. Nelson's and Mr. Mitchiner's deafness, as well as the deafness and hearing impairment of the other Class members, are disabilities within the meaning of the ADA. 42 U.S.C. § 12102(2)(A).

70. Mr. Nelson, Mr. Mitchiner, and the other Class members are qualified individuals with a disability within the meaning of Title II of the ADA, 42 U.S.C. § 12131(2).

71. Under Title II of the ADA, Mr. Nelson, Mr. Mitchiner, and the other Class members at all relevant times had a right not to be subjected to discrimination on the basis of their disabilities by the District or any of its departments, agencies, or instrumentalities. 42 U.S.C. § 12132.

72. The District, through itself and its agencies, departments, and instrumentalities, including DHS, IMA, and DCOZ, acting under color of D.C. law, subjected Mr. Nelson, Mr. Mitchiner, and other Class members to discrimination based on their disabilities, in violation of their rights under the ADA, by failing to provide a qualified sign language interpreter or auxiliary aids, or other services as needed to communicate with persons who are deaf or hard of hearing. The District's failure to provide for effective communication with individuals with hearing disabilities denied and continues to deny, solely on the basis of their disabilities, Mr. Nelson, Mr. Mitchiner, and other Class members the same access to services, benefits, activities,

programs, and requirements of the District that are granted to other individuals who are able communicate with the District and its agencies, departments, and instrumentalities without accommodation.

73. On information and belief, it is the regular practice, custom and/or policy of the District and its agencies, departments, and instrumentalities not to provide qualified sign language interpreters, auxiliary aids or effective means of communication to deaf persons that the District comes in contact with, including but not limited to deaf individuals who seek to use or avail themselves of the services, activities, benefits, programs, and requirements of the District.

74. As a proximate result of the District's violations of Plaintiffs' rights under the ADA, Plaintiffs have suffered and continue to suffer from discrimination, unequal treatment, exclusion from access to government services, financial loss, frustration, humiliation, anxiety, loss of dignity, and embarrassment.

75. The District's continuing failure to provide appropriate auxiliary aids and services, including qualified sign language interpreters, auxiliary aids, and other means to ensure effective communication with deaf and hard of hearing persons, continues to inflict harm, including discrimination, unequal treatment, exclusion, denial of public assistance, violations of their rights under the laws of the United States and the District of Columbia, financial loss, frustration, humiliation, emotional pain and suffering, anxiety, trauma, and embarrassment upon the Plaintiffs. Plaintiffs are likely to suffer further such harm as a result of the District's violations of the ADA. Because Plaintiffs will continue to reside in the District or continue to attempt to use or avail themselves of the services, benefits, activities, programs, and requirements of the District, or both, Plaintiffs are likely to require further assistance in their

communications with the District.

76. Plaintiffs have a right of action under the ADA, 42 U.S.C. §§ 12132-12133.

77. The District is liable to Plaintiffs for harms suffered, and for prospective relief.

## COUNT II

**(Discrimination on the Basis of a Disability in Violation of the Rehabilitation Act)**

78. Paragraphs 1-62 are incorporated as if fully restated herein.

79. Defendant District of Columbia receives Federal financial assistance.

80. Defendant District of Columbia distributes Federal financial assistance to its departments, agencies, and instrumentalities.

81. On information and belief, Defendant District of Columbia's departments, agencies, and instrumentalities receive Federal financial assistance.

82. Defendant District of Columbia employs more than fifteen persons.

83. The operations of Defendant District of Columbia and its departments, agencies, and instrumentalities are a "program or activity" within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(b)(1)(A).

84. Mr. Nelson's and Mr. Mitchiner's deafness and the deafness and hearing impairment of other Class members are disabilities within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(20).

85. Plaintiffs are qualified individuals with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(20).

86. Under the Rehabilitation Act, Plaintiffs have and at all relevant times had a right not to be discriminated against solely on the basis of their disabilities by the District or any of its agencies, departments, or instrumentalities. 29 U.S.C. § 794(a).

87. The D.C. Government itself, and through its agencies, departments, and instrumentalities, including DHS, IMA, and DCOZ, acting under color of D.C. law, subjected Mr. Nelson, Mr. Mitchiner, and other Class members to discrimination based on their disabilities, in violation of their rights under the Rehabilitation Act, by failing to provide a qualified sign language interpreter, auxiliary aids, or other methods of effective communication with persons with hearing disabilities.

88. This District's failure to provide for effective communication with hard of hearing individuals with disabilities denied and continues to deny, solely on the basis of their disabilities, Mr. Nelson, Mr. Mitchiner, and other Class members the same access to services, benefits, activities, programs, and requirements of the District that are granted to other individuals who communicate effectively with the District and its agencies, departments, and instrumentalities.

89. On information and belief, it is the regular practice, custom and/or policy of the D.C. Government and its agencies, departments, and instrumentalities not to provide qualified sign language interpreters, auxiliary aids or effective means of communication to deaf persons that the District comes in contact with, including but not limited to deaf individuals who seek to use or avail themselves of the services, activities, benefits, programs, and requirements of the District.

90. As a proximate result of the District's violations of Plaintiffs' rights under the ADA, Plaintiffs have suffered and continue to suffer from discrimination, unequal treatment, exclusion from access to government services, financial loss, frustration, humiliation, anxiety, loss of dignity, and embarrassment.

91. The District's continuing failure to provide qualified sign language interpreters, auxiliary aids and other means of effective communication with deaf and hard of hearing persons

continues to inflict harm, including discrimination, unequal treatment, exclusion, denial of public assistance, violations of their rights under the laws of the United States and the District of Columbia, financial loss, frustration, humiliation, emotional pain and suffering, anxiety, trauma, and embarrassment upon the Plaintiffs. Plaintiffs are likely to suffer further such harm as a result of the District's violations of the Rehabilitation Act. Because Plaintiffs will continue to reside in the District or continue to attempt to use or avail themselves of the services, benefits, activities, programs, and requirements of the District, or both, Plaintiffs are likely to require further assistance in their communications with the District.

92. Plaintiffs Mr. Nelson, Mr. Mitchiner, and the other Class members have a right of action under the Rehabilitation Act, 29 U.S.C. § 794(a).

93. The District is liable to Plaintiffs for harms suffered, and for prospective relief.

## COUNT III

### (Discrimination on the Basis of Disability, in Violation of the District of Columbia Human Rights Act)

94. Paragraphs 1-62 are incorporated as if fully restated herein.

95. Defendant District of Columbia is subject to the District of Columbia Human Rights Act, D.C. Code § 2-1402.73.

96. Plaintiffs are individuals with disabilities within the meaning of the Human Rights Act, D.C. Code § 2-1401.02(5A).

97. Through its failure to provide qualified sign language interpreters, TDDs, video-text displays, assistive listening devices, auxiliary aids and services, and other effective means of communication for deaf and hard of hearing individuals, the District has limited and refused to provide and continues to limit and refuse to provide facilities, services, programs, and benefits to Plaintiffs on the basis of Plaintiffs' disabilities.

98. Because of the District's violations of Plaintiffs' rights under the District of Columbia Human Rights Act, Plaintiffs have suffered and continue to suffer harm through financial loss, denial of benefits and services, frustration, humiliation, emotional pain and suffering, anxiety, trauma and embarrassment. As a result of the District's ongoing violations, Plaintiffs are likely to suffer further harm as a result of ineffective communication and denial of facilities, services, programs, and benefits in the future. Plaintiffs will continue to need to use or avail themselves of the District's facilities, services, programs and benefits.

99. Plaintiffs have a right of action under the District of Columbia Human Rights Act, D.C. Code § 2-1401.01, *et seq.*

100. The District is liable to Plaintiffs for harms suffered, and for prospective relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that:

A. The Court determine that this action may proceed as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3);

B. The Court adjudge and decree that Defendant has violated and continues to violate Title II of the ADA, Section 504 of the Rehabilitation Act, and the statutory law of the District of Columbia;

C. The Court enter such declaratory and injunctive relief against the Defendant and in favor of Plaintiffs and the Class as it deems appropriate to remedy past violations of the laws of the United States and the District of Columbia and to prevent future violations of the same;

D. Judgment be entered against Defendant in favor of the Plaintiffs for such compensatory damages as suffered by Plaintiffs in an amount to be determined at trial;

E.  Judgment be entered against Defendant in favor of Plaintiffs and the Class for the costs of litigation including reasonable attorneys' fees, and;

F.  The Court award Plaintiffs and the Class any further relief the Court deems appropriate.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all of the claims asserted in this complaint so triable.

Dated: May 15, 2008                                  Respectfully Submitted,

    /s/ Michael Baratz
Michael Baratz Bar No. 480607
Scott Watkins Bar No. 445876
Jose R. Gonzalez-Magaz Bar No. 474343
**STEPTOE & JOHNSON LLP**
1330 Connecticut Avenue, NW
Washington, D.C. 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

    /s/ E. Elaine Gardner
E. Elaine Gardner  Bar No. 271262
**WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS
AND URBAN AFFAIRS**
11 Dupont Circle, NW Suite 400
Washington, D.C. 20036
Telephone: (202) 319-1000
Facsimile: (202) 319-1010

Attorneys for Plaintiffs
DAVID NELSON,
JON MITCHINER and
THE EQUAL RIGHTS CENTER

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing was sent electronically and via U.S. mail to the following this 15th day of May, 2008, to:

Grace Graham
Assistant Attorney General
441 Fourth Street, N.W., Suite 600S
Washington, DC 20001
grace.graham@dc.gov

Attorney for Defendant District of Columbia


    /s/ Korey J. Barry
Korey J. Barry
Litigation Paralegal
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036